## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DONALD L. STOKES,

          **Plaintiff,**        **CIVIL ACTION NO. 09-CV-12722**

    **vs.**

                        **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be GRANTED in part, Defendant's Motion For Summary Judgment (docket no. 11) be DENIED and that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

***

**II.**    **PROCEDURAL HISTORY:**

    Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on December 16, 2004 alleging that he had been disabled since April 30, 2004 due to anxiety attacks and bilateral shoulder pain.  (TR 47-49, 80-81).  The Social Security Administration denied benefits.  (TR 36-41).  Administrative Law Judge John L. Christensen (ALJ) held a de novo hearing on January 30, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because he was not under a disability within the meaning of the Social Security Act at any time from

April 30, 2004 through the date of the ALJ's July 22, 2008 decision. (TR 13-22). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 2-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff was forty-three years old at the time of the hearing. (TR 438). He has an eighth grade education and some trade school education. (TR 139). He can read and write. (TR 139). Plaintiff last work as a janitor and later on an assembly line. (TR 140). He testified that he was fired when he could not keep up with production. (TR 140). Plaintiff testified that he would wander off at that job and sometimes had panic attacks and started crying for no reason. (TR 446). Plaintiff testified that he was drinking at that time, but only at night at home, and that he stopped drinking approximately one month prior to the hearing. (TR 441, 446). He testified that it would be difficult to do any of his prior work because he is always in pain due to arthritis and tendinitis in both shoulders. (TR 442).

Plaintiff lives with his wife and six children. (TR 436). Plaintiff is able to drive but took the bus to the hearing because his wife needed the car. (TR 438). Plaintiff testified that he takes medications for pain and his psychiatric condition and the medications make him sleepy, drowsy or dizzy at times. (TR 443-44). He takes at least two naps a day for up to a total of three to four hours. (TR 44). Plaintiff sometimes has problems reaching overhead or away from his body due to his shoulder conditions. (TR 445). He testified that he can take the garbage out, which weighs not more than twenty-five pounds, but it causes pain in his arms. (TR 445). Plaintiff testified that he has

2

panic attacks and becomes upset easily. (TR 445). He testified that he does not finish the things he starts and he sometimes forgets important things. (TR 445).

### B. Medical Evidence

### 1. *Mental Impairments*

Plaintiff's motion for summary judgment raises issues related to his bilateral shoulder pain and his mental impairments. For this reason, after considering the complete record the Court primarily focuses its summary of the medical evidence on these two areas with further detail set forth below in the analysis. In February 2004 Plaintiff reported to the emergency room with heart palpitations. (TR 158). An EKG indicated bradycardia but was otherwise normal. (TR 157). On follow-up exam in April 2004 Matthew Kingsbauer, D.O., advised that the arrhythmia detected on the Holter monitor could be secondary to caffeine, smoking and alcohol abuse and advised Plaintiff to quit smoking and abusing alcohol. (TR 154-56).

As early as December 14, 2004 Plaintiff complained of depression and anxiety attacks to Sandhya Pattern, M.D., who increased Plaintiff's Prozac dosage and referred him for counseling. (TR 152-53). In December 2005 Dr. Pattern prescribed Trazodone following Plaintiff's complaints of becoming aggressive with his anger and his mood swings. (TR 133-36). The doctor noted that Plaintiff reported both feeling and sleeping better while using the Trazodone. (TR 133).

Plaintiff underwent a psychiatric evaluation with Gordon R. Forrer, M.D., on May 11, 2005. (TR 102-106). Dr. Forrer noted Plaintiff's reported that he was taking medications amitriptyline, etodolac, tramadol and fluoxetine. (TR 102). Dr. Forrer noted Plaintiff's report that he is a heavy drinker and last had a drink one week prior to the evaluation and reported a hospitalization in 1990 related to Plaintiff's alcoholic history. (TR 103). Dr. Forrer diagnosed cognitive impairment NOS (294.9), alcohol related disorder NOS (291.9), and personality disorder NOS (301.9) with antisocial,

dependent and violent components. (TR 106). Dr. Forrer opined that Plaintiff's "[c]urrent level of psychological functioning" was "adequate in relationship to the limitations" of his Axis I diagnoses. (TR 106).

Ashok Kaul, M.D., psychiatrist, completed a Psychiatric Review Technique dated May 25, 2005. (TR 107-119). Dr. Kaul diagnosed an organic mental disorder (12.02), cognitive impairment NOS, personality disorder NOS and alcohol related disorder NOS. (107-112). Dr. Kaul concluded that Plaintiff has mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace with no episodes of decompensation. (TR 113). Dr. Kaul concluded that Plaintiff is "able to understand, remember and carry out simple instructions," is "moderately limited in ability to remember and carry out detailed instruction, maintain concentration, interact with (sic) public, respond to authority and to changes in work setting and maintain socially appropriate behavior," and that Plaintiff "appears to be capable of simple, unskilled work." (TR 118).

Plaintiff's mental health treatment was through Catholic Charities, from September 2006 through April 2008 where he engaged substance use disorder services including both individual and group counseling. (TR 244-419, 244, 247, 264, 366, 371). Plaintiff primarily treated with Kimberly Warchol-Smith, BA, LCDC, CACR and Spencer Ballard, D.O., who prescribed medications during this period of time. (TR 244). On May 3, 2007 Dr. Ballard diagnosed Plaintiff as bipolar and depressed and made a notation to rule out paranoid schizophrenia. (TR 304). On January 21, 2008 Ms. Warchol-Smith and her supervisor completed a Biopsychosocial Assessment of Plaintiff and listed diagnoses as alcohol dependence (303.90) and bipolar NOS (296.90). In April 2008 Dr. Ballard was prescribing Zyprexa and Klonopin. (TR 374-75). Dr. Ballard's records are discussed in further detail below.

Noted throughout the medical records are reports of Plaintiff's use of alcohol and history of alcohol abuse. As late as January 10, 2008 Harbir Bhullar, M.D., noted that Plaintiff has a history of alcohol abuse and noted Plaintiff's report that he has been following up with Alcoholics Anonymous and that his last drink of alcohol was four weeks prior to the exam. (TR 229).

**2.** *Physical Impairments*

From 2004 through February 2008 Plaintiff treated regularly at Genesys Regional Medical Center. (TR 157, 227). On December 14, 2004 Plaintiff reported right shoulder pain which he reported had started ten months prior. (TR 154). On December 29, 2004 Plaintiff reported bilateral shoulder pain. (TR 151). On examination Sandhya Pattern, M.D., reported decreased range of motion in abduction, adduction and extension with tenderness over the "bilateral AC joints and with deep palpitation of the shoulder joint." (TR 151). Dr. Pattern diagnosed bilateral should bursitis and gave injections of Demo-Medrol and lidocaine in both shoulders. (TR 151). As set forth in detail in the analysis below, Plaintiff continued to complain of shoulder pain throughout the relevant time period.

An April 2006 MRI of the left shoulder revealed findings "suggestive of a mild tendinosis involving the supraspinatus," "degenerative changes of the acromioclavicular joint" and "[n]o evidence of full thickness rotator cuff tear." (TR 161). In August 2006 Plaintiff complained of pain in the left finger with swelling and Tetsuya Yoshioka, M.D., diagnosed bilateral shoulder pain plus arthritis in the fingers but noted that "[s]o far rheumatoid studies are negative." (TR 174). The latest diagnosis in the record from Genesys was from Harbir Bhullar, M.D., who reported Plaintiff's diagnoses as bilateral shoulder arthritis and tobacco abuse. In 2006 through 2007 Plaintiff was primarily treated with Vicodin-ES for pain. (TR 175-77, 187, 234). The record shows that in November 2006 Dr. Yoshioka prescribed Disalcid for shoulder pain. (TR 173).

Plaintiff was in a car accident on October 7, 2007 in which he was the driver of an automobile and hit a tree. (TR 209, 212-24). Plaintiff suffered multiple facial lacerations, a right humerus fracture and right pulmonary contusion. (TR 209). Medical reports note that "laboratory studies were significant for alcohol of 352 and amylase of 105 and Plaintiff was described as "intoxicated" when the accident occurred. (TR 209, 239). Plaintiff's secondary diagnoses were paranoid schizophrenia, acute alcohol intoxication and mild hyperamylasemia. (TR 209). The medical records note that Plaintiff requested to be discharged on October 10, 2007 and "[w]hile the trauma service was attempting to make sure that all of [his] needs for discharge home were set up, [he] . . . apparently became impatient, took off his own cervical collar, threw it in the garbage and ended up eloping from the floor." (TR 210). Rabinder Sidhu, M.D., reported on October 24, 2007 that Plaintiff's pain was uncontrolled with Darvocet. (TR 237). In November 2007 Dr. Sidhu reported that Plaintiff continued to complain of bilateral shoulder pain due to tendinitis. (TR 234).

An x-ray in December 2007 revealed "further healing of the fractured neck of the right humerus." (TR 214). At a December 6, 2007 follow-up examination with Norman Walter, M.D., Dr. Walter reported that Plaintiff was minimally painful to palpation over the fracture site and had good range of motion including internal rotation. (TR 202). Plaintiff could reach his lower lumbar spine, had forward flexion of 75 degrees, abduction of about 50-60 degrees and good external rotation. (TR 202).

## C.    Vocational Expert

The ALJ asked the VE to consider an individual with the same age, education and work experience as Plaintiff, with the ability to perform light work limited to simple, routine tasks in a low stress environment, described as minimal changes in the work place setting and no more than occasional contact with the general public. (TR 449). The ALJ further limited the individual to no

overhead reaching and only occasional other reaching and grasping. (TR 449). The VE testified that such an individual could perform work in the light unskilled category, for example, inspector (approximately 18,000 jobs in the lower peninsula of Michigan), laundry worker (approximately 4,300 jobs) and machine operator (a reduced number of approximately 11,000 jobs). (Docket no. 449). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT).

The ALJ asked the VE to consider an individual as set forth in the prior hypothetical with the additional limitation that as a result of pain, a bipolar condition and medication to treat these conditions, the individual "cannot sustain sufficient concentration, persistence and pace to do even simple routine tasks on a regular continuing basis," defined as eight hours per day, five days a week, forty hours per week. (TR 450). The VE responded that work would be precluded. (TR 450).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 30, 2004 and suffers from polysubstance abuse, depression, a personality disorder, bilateral shoulder pain and a cognitive impairment, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 16-17). The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work but due to severe limitations associated with his substance abuse, he cannot sustain full time work. The ALJ found that if Plaintiff stopped the substance abuse, he would continue to have a "severe" combination of impairments, however, he would be able to perform a limited range of light work. He would not be able to perform his past relevant work, but he would be able to perform a significant number of jobs in the economy and therefore he was not suffering from a disability under the Social Security Act. (TR 17-22).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ did not properly evaluate the medical records including two treating physicians' opinions and the limitation in the RFC to "simple" work did not adequately account for Plaintiff's deficiency in concentration. (Docket no. 9).

### C.     Analysis

#### 1.     *Whether The ALJ Properly Considered The Treating Physicians' Opinion*s

##### a.     *Dr. McIntosh's Opinions That Plaintiff Is Unable To Work*

Plaintiff argues that the ALJ improperly discounted Dr. McIntosh's opinions that Plaintiff is unable to work. The first of the two opinions at issue is dated February 26, 2007 wherein Dr. McIntosh stated that Plaintiff is under her care "for treatment of severe tendinitis and arthritis of the shoulders and osteoarthritis of the wrists. Due to the nature and severity of his condition and his modest response to treatment, he is unable to work at thus (sic) time." (Docket no. 186). The second of the opinions is a May 15, 2007 letter in which Dr. McIntosh stated that Plaintiff is under her care "for treatment of refractory rotator cuff tendinitis both (sic) shoulders. He remains unable to work due to the severity of his condition and modest response to treatment." (Docket no. 185). The ALJ considered Dr. McIntosh's opinions and summarized the May 15, 2007 opinion, noting that the doctor "opined the claimant was disabled." (Docket no. 16).

It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ specifically determined that "[t]he opinion of Dr. McIntosh that the claimant was disabled due to shoulder pain is not substantiated by the objective evidence. He has not required chronic treatment for his shoulder. While he requires restrictions for his shoulder, there is no indication he could not perform restricted work." (Docket no. 21). If anything, the ALJ read Dr. McIntosh's opinion broadly on the issue of disability and in scope of time. In both instances, Dr. McIntosh opined that Plaintiff is either unable to work "at thus (sic) time" or "*remains* unable to work." (Docket no. 185-86, emphasis added). The ALJ did not err in failing to adopt a doctor's conclusion that Plaintiff is "disabled."

The ALJ's findings related to Dr. McIntosh's opinion about Plaintiff's ability to work are supported by substantial evidence in the record. As both Defendant and the ALJ pointed out, the majority of examinations of Plaintiff's shoulders resulted in mild or normal findings

From December 2004 throughout 2005 Plaintiff continued to complain of shoulder pain, including an increase in left-shoulder pain. (TR 151). Following Plaintiff's complaints of continuous right shoulder pain, a December 2004 x-ray was normal. (TR 162). Examination revealed tenderness and restricted movement with elevation. (TR 152-53). In the same month Plaintiff underwent injections of Demo-Medrol and lidocaine in both shoulders. In January 2005 Plaintiff had normal range of motion in the shoulders and pinpoint tenderness in the bilateral trapezius near the AC joint. (TR 150). Plaintiff was continued on Ultram 100 mg twice per day. (TR 149). Two weeks later Plaintiff continued to complain of pain and Heidi Lakes, M.D., reported direct tenderness over the acromion and pain on abduction, but normal range of motion. (TR 148). Range of motion remained normal until March 2005 when it was reported to be decreased. (TR 143). Plaintiff reported undergoing physical therapy with some improvement. (TR 143).

In July 2005 Plaintiff underwent a state agency medical examination with J.L. Tofaute, M.D., board certified in orthopedic surgery. (TR 120-25). On examination Dr. Tofaute described Plaintiff as "athletic appearing," reported that there was no visible or palpable muscle atrophy in Plaintiff's shoulders, and found Plaintiff's range of motion in the shoulders to be normal in abduction, adduction, forward elevation and external rotation and diminished in internal rotation. (TR 121). The doctor concluded that Plaintiff "showed us good strength and facility in both upper extremities, being able to handle small objects such as coins well," and demonstrating strong values for grip strength in both hands. (TR 121).

By December 2005 Dr. Pattern reported point tenderness on the left shoulder acromion area but otherwise normal range of motion, normal strength and normal reflexes in the bilateral upper extremities. (TR 137). In March 2006, despite complaints of bilateral shoulder pain, Tetsuya Yoshioka, M.D., reported that on examination bilateral range of motion was full and bilateral muscle strength was 5/5. (Docket no. 126-27). Strength of the shoulders and extension were predominately reported as normal during February and March 2006 despite continued complaints of pain, and range of motion was normal or only slightly limited. (TR 126-31). On February 17, 2006 Srinivasa Madirrey, M.D., noted that Plaintiff was "ambulating well" and "doing his regular activities without any difficulty." (TR 129).

The only doctor of record other than Dr. McIntosh who noted work restrictions was Joan Vicente, M.D., who reported on August 15, 2006 that "[a] note for work restricting unrepetitive use of his shoulders temporarily was written for now until re-evaluated." (TR 175).

Through 2006 Plaintiff's range of motion in the shoulders continued to be "good" or "almost full on both sides." (TR 173, 175). Dr. Yoshioka reported that the hands "showed enlarged PIP and DIP joints in the hands but not much tenderness." (TR 173). Dr. Yoshioka also reported that he was

going to be "very cautious prescribing narcotics for home & (sic) because of his almost normal physical examination." (Docket no. 173).

By December 2007, following the October 2007 car accident and Plaintiff's fractured right surgical humeral neck, Dr. Walter reported that Plaintiff had "good range of motion, including internal rotation" and could "reach to his lower lumbar spine." (TR 202). In January 2008 Dr. Bhullar reported on examination that Plaintiff was "well-built" and examination of the right shoulder revealed no muscle wasting and range of motion was restricted in all directions, but with no instability, no decrease in upper extremity strength and no sensory deficits. (TR 229). Dr. Bhullar's February 2008 examination was consistent with the January examination but noted that range of motion was "improved compared to his previous visit a month ago" and that physical therapy had improved the range of motion in both shoulders. (TR 227).

Even Dr. McIntosh's examinations were predominately normal and/or mild. On December 26, 2005 Dr. McIntosh first examined Plaintiff at the referral of Kenneth Yokosawa, M.D. (TR 132). On examination Dr. McIntosh described Plaintiff as "a very muscular male with extreme tenderness over the subacromial bursa are on the left side, less so on the right." (TR 132). The doctor reported pain with internal rotation of the shoulders and all other range of motion normal bilaterally, with normal hands. (TR 132). The doctor diagnosed bilateral shoulder pain consistent with overuse syndrome, and a note to rule out other conditions including rotator cuff injury. (TR 132). She changed his prescription from Tramadol to Vicodin. (TR 132).

Dr. McIntosh reported on April 26, 2006 that range of motion in the left shoulder was diminished to about 110 degrees abduction but was otherwise "normal." (Docket no. 196). The doctor also reported that it appeared that the Vicodin was working at that time and that Plaintiff "was informed that his symptoms will probably not resolve as long as he is employed as a painter."

13

(Docket no. 196). The April 2006 MRI of the left shoulder revealed findings "suggestive of mild tendinosis involving supraspinatus," "[n]o evidence of full thickness rotator cuff tear" and "degenerative changes of the acromioclavicular joint." (TR 161).

By 2007 Dr. McIntosh reported Plaintiff's diagnoses as bilateral rotator cuff tendinitis, osteoarthritis of an acromioclavicular joint and osteoarthritis of the CMC joint. (TR 191). Dr. McIntosh reported that on physical examination Plaintiff had pain and limited abduction particularly on the left side, the left CMC joint was enlarged and tender and there was mild swelling and tenderness of the left third and fourth PIP joints. (TR 191). In August 2007 Dr. McIntosh examined Plaintiff on a consultation request from Kenneth Yokosawa, M.D. (TR 187). Dr. McIntosh described Plaintiff as "in no apparent distress," "well-developed and nourished with good attention to hygiene and body habitus." (TR 187). Dr. McIntosh reported that Plaintiff's shoulders "appear to be normal", Plaintiff had pain with forced abduction and range of motion was maintained. (TR 187). The doctor diagnosed bilateral rotator cuff tendinitis with no improvement and instructed Plaintiff to continue with pain medication and return to the office in six months for follow-up. (TR 187).

Plaintiff has not pointed out any other evidence of record which is consistent with Dr. McIntosh's findings of the severe limitation of being unable to work. Plaintiff points out only Dr. McIntosh's note that Plaintiff has "not been able to take advantage of physical therapy due to lack of insurance coverage." (TR 196). Furthermore, Dr. McIntosh's opinion is not clear whether she finds he would be unable to perform work at *any* exertional level, and with further restrictions

relating to his upper extremities. Plaintiff's treatment providers, including Dr. McIntosh, noted Plaintiff's reports that he was a painter [1].

The ALJ pointed out where the severity of Dr. McIntosh's opinions that Plaintiff could not work at that time was not supported by medically acceptable clinical and laboratory diagnostic techniques and was not consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ gave good reasons for his decision not to give controlling weight to Dr. McIntosh's opinions regarding Plaintiff's inability to work and his reasons are supported by substantial evidence[2]. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

### b. Dr. Ballard's Opinion

Next, Plaintiff argues that the ALJ erred in failing to address Dr. Ballard's opinion. Dr. Ballard treated Plaintiff through Catholic Charities. Specifically, Plaintiff argues that the ALJ did not address Dr. Ballard's medical source statement dated January 24, 2008 including the diagnoses of bipolar disorder and organic mental disorder. (TR 226, 304, 310). Defendant does not dispute the allegation that the ALJ did not discuss Dr. Ballard's opinion in his decision. In fact, Defendant

---

[1] In February 2005 Heidi Lakes, M.D., noted that Plaintiff reported that he is a painter and uses his shoulder every day. (TR 145). In March 2005 Thomas Bossi, D.O., noted Plaintiff's report that he is a painter and his pain worsens with flexion of the shoulder joints. (TR 141). On February 6, 2006 Dr. Yoshioka noted Plaintiff's report that despite taking Tylenol, the pain was not controlled enough and that Plaintiff moves his arms "because his job is painting." (TR 131).

[2] Plaintiff has not otherwise argued on appeal that the ALJ's RFC with respect to Plaintiff's physical limitations is not supported by substantial evidence. The ALJ found that if Plaintiff stopped his substance abuse, he would have the RFC to perform light work limited to simple routine tasks in a low stress environment with minimal changes in workplace setting, no more than occasional contact with the general public and no overhead reaching and only occasional other reaching and grasping. Other than Dr. McIntosh's opinion there is no evidence in the record of physical limitations more restrictive than those set forth by the ALJ's RFC. The mental impairments and related limitations are discussed below.

argues instead that "Dr. Ballard's opinion was so patently deficient that the ALJ could not have given it significant weight" and the failure to address the opinion "was harmless error at best." (Docket no. 11 at 19 of 24).

On the January 2008 Medical Source Statement (Mental), Dr. Ballard listed Plaintiff's diagnoses as bipolar disorder with psychosis and organic mental disorder. (TR 226). On the check-box form Dr. Ballard indicated that Plaintiff is moderately limited in the ability to understand, remember and carry out simple one or two step job instructions and the ability to deal with the public. (TR 226). Dr. Ballard concluded that Plaintiff is markedly limited in the ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions, ability to relate and interact with supervisors and co-workers, ability to maintain concentration and attention for at least two hour increments and ability to withstand the stress and pressures associated with an eight-hour work day and day to day work activity. (TR 226). When asked "[t]o what extent has drug addiction or alcoholism contributed to the above limitations" Dr. Ballard checked "[n]one or not significantly." (TR 226).

Plaintiff has a history of treatment with Dr. Ballard from May 2007 through April 2008. Plaintiff underwent a Psychiatric Evaluation with Dr. Ballard on May 3, 2007. (TR 303-07). Dr. Ballard reported that Plaintiff was cooperative, related well and had good eye contact, his stream of mental activity was spontaneous and goal directed, his affect was sad and tearful, his mood was depressed and he reported auditory hallucinations. (TR 303). Dr. Ballard reported that Plaintiff's recent and remote memory were intact, his insight was limited and judgment was questionable. (TR 304). The doctor noted Plaintiff's report that he drank alcohol on occasion. (TR 304). Dr. Ballard diagnosed Plaintiff as bipolar and depressed and made a note to rule out paranoid schizophrenia. (TR 304). He assigned a GAF of 40. (TR 305). Dr. Ballard identified the symptoms and behaviors

of concern as Plaintiff's depression, chronic anger, decreased stress tolerance and hallucinations. (TR 306). The doctor prescribed Invega and ordered continuation of Prozac and Elavil. (TR 306).

The remainder of Dr. Ballard's records are Medication Review/Updated Plan forms and prescriptions completed between May 2007 and April 2008. (TR 372-19). The forms contain brief notations regarding the effectiveness of Plaintiff's current medications and any plan related to medication, for example, changes in dosage. (TR 416).

Defendant argues Dr. Ballard's January 2008 opinion was patently deficient because it ignored Plaintiff's significant treatment for alcoholism. Defendant argues that *Wilson v. Comm'r Of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), left open the possibility that "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe 1527(d)(2) may not warrant reversal." *Wilson*, 378 F.3d at 547 (citation omitted). As Defendant pointed out, despite Dr. Ballard's January 2008 opinion on the Medical Source Statement that drug addiction or alcoholism has not or has not significantly contributed to Plaintiff's limitations, Dr. Ballard's records show knowledge of Plaintiff's alcohol use. On November 1, 2007 Dr. Ballard noted Plaintiff's report that he had driven his truck into a tree, was drunk and angry when it happened, was still hearing voices and had insomnia. (TR 391). On January 3, 2008 Dr. Ballard noted that Plaintiff was in Odyssey house for alcohol treatment and "has problems with handling this change." (TR 382).

In this instance, the Court cannot find that Dr. Ballard's opinion was so patently deficient that it is clearly harmless error. While Defendant has certainly cited, and the record supports, evidence showing that Plaintiff's primary reason for treatment through Catholic Charities was alcohol abuse, this alone is not sufficient reason for the Court to find that Dr. Ballard's January 24, 2008 opinion could not be credited in any respect. As Plaintiff pointed out, the opinion also includes

a diagnosis of bipolar disorder, consistent with Dr. Ballard's May 2007 diagnosis, and yet unaccounted for in the ALJ's decision, whether discounted or otherwise[3]. (TR 304).

The limitations related to Plaintiff's mental impairments as set forth in Dr. Ballad's opinion are more severe than the limitations found by the ALJ. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§404.1527(e), 416.927(e). The ALJ is, however, required to give the reasons for the weight he assigned to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ followed the prescribed rules for evaluating Plaintiff's mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ determined that Plaintiff has the medically determinable mental disorders specified in two of the diagnostic categories. *See id.*; 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.06 and 12.09 (TR 17).

The ALJ then measured the severity of the mental disorders in terms of four functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ determined that given Plaintiff's alcohol abuse he had moderate limitations in activities of daily living, social functioning and concentration, persistent and pace and had at least one or two episodes of decompensation. (TR 17). The ALJ then evaluated the "B" criteria if Plaintiff stopped substance use. 20 C.F.R. §§ 404.1535(b), 416.935(b). (TR 19). The ALJ found that Plaintiff would have mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence and pace and no episodes of decompensation. (TR 19).

---

[3] The ALJ found that Plaintiff's severe mental impairments include poly substance abuse, depression, a personality disorder and a cognitive impairment. (TR 16). The ALJ considered listings 12.06 and 12.09 when evaluating the mental impairments. (TR 16). 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.06, 12.09. Bipolar syndrome is addresses in Listing 12.04.

In support of his findings the ALJ stated that Plaintiff "has not required persistent treatment for depression or any other psychological abnormality." (TR 19). As set forth above, the record shows that Plaintiff has been prescribed anti-depressant and anti-psychotic medication for a number of years, by both the practitioners treating his physical conditions and by Dr. Ballard. Dr. Ballard's more severe limitations and his opinion that alcohol use does not significantly contribute to the limitations are not addressed in the ALJ's opinion and may result in a more restrictive RFC.

The Court is left speculating as to what, if any, consideration was given to Dr. Ballard's January 24, 2008 opinion. "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (internal citations omitted). It is not possible for the Court to tell whether the ALJ applied the proper standards in evaluating the medical evidence and evaluating Plaintiff's mental impairments.

The Court should find that the ALJ did not explain the weight given to Dr. Ballard's January 24, 2008 opinion and Dr. Ballard's treatment records and diagnoses and has not given good reasons for the failure to credit the diagnoses and opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). This case should be remanded for determination of the weight to be given to Dr. Ballard's opinion and bipolar diagnosis and the ALJ must specifically cite good reasons, including references to contradictory evidence on which he relied, for failing to give his opinion controlling weight.

**2.      *Whether the ALJ's Step Five Determination Is Supported By Substantial Evidence***

Finally, Plaintiff argues that the hypothetical question presented to the VE limiting Plaintiff to "'simple routine tasks in a low stress environment' does not properly or adequately account for his finding that [Plaintiff] suffers moderate difficulties in concentration, persistence or pace."

(Docket no. 9). Plaintiff argues that a limitation to "simple" work does not account for deficiencies in concentration. Plaintiff relies on *Bielat v. Comm'r of Soc. Sec.*, 2003 U.S. Dist. LEXIS 11722 (E.D. Mich. 2003) for the proposition that "a hypothetical question that described the clamant as requiring 'simple work' was insufficient to encompass the limitation of 'often having deficiencies in concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.'" *Bielat v. Comm'r of Soc. Sec.*, 2003 U.S. Dist LEXIS 11722 at * (E.D. Mich. 2003) (citations omitted). The difference in this instance is that, except for Dr. Ballard's opinion, there is no evidence of record that Plaintiff would have more than a moderate limitation in concentration, persistence or pace or that Plaintiff's limitations would manifest in the "failure to complete tasks in a timely manner." The ALJ did not find that Plaintiff had a marked limitation in concentration, persistence or pace or would often suffer deficiencies this area. There is also evidence of record that despite the limitations, Plaintiff could perform simple, unskilled work and even Dr. Ballard opined that Plaintiff's limitations with respect to simple one or two step job instructions were less severe than his limitations related to technical and/or complex job instructions. (TR 107-19, 226).

The physical limitations set forth in the ALJ's RFC are supported by substantial evidence. However, as set forth above with respect to Dr. Ballard's opinion, the ALJ's RFC as presented in the hypothetical question may or may not have adequately accounted for Plaintiff's mental limitations. Therefore, the hypothetical question was not simply deficient for the reason alleged by Plaintiff. On remand the ALJ should consider Dr. Ballard's opinion and treatment records and, if necessary, make a new RFC determination on Plaintiff's mental impairments and related limitations and perform new step four and step five determinations as necessary.

## VI.      CONCLUSION

For the reasons set forth herein the ALJ's opinion is not supported by substantial evidence. Defendant's Motion for Summary Judgment (docket no. 11) should be denied, that of Plaintiff (docket no. 9) granted in part and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein and a new determination at steps four and five if necessary.

Specifically, the case must be remanded back to the ALJ so that he may: (1) Re-assess Dr. Ballard's opinions in light of the findings made herein, explaining the weight given to his opinion and giving good reasons for discounting the opinions, specifically stating how the medical evidence supports or contradicts the opinions; (2) re-evaluate, if necessary, Plaintiff's RFC; and (3) if warranted, conduct a new step-four and a new step-five analysis; and re-evaluate whether Plaintiff's alcoholism is a contributing factor material to the determination of disability.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of*

*the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 23, 2010            s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 23, 2010            s/ Lisa C. Bartlett
                              Case Manager